UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DR. ALYSSA FRIEDBERG AND PAUL SHINDELL,<br><br>              Plaintiffs,<br><br>   vs.<br><br>CATHY BETTS, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY; ELLADINE OLEVAO, SUED IN PERSONAL AND PROFESSIONAL CAPACITY; KINTARO YONEKURA, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY; IWALANI KAAUWAI-HERROD, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY; KIRSTIE KASHIMA, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY;  HAWAII DEPARTMENT OF HUMAN SERVICES, STACIE PASCUAL, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY; JAMES WALTHER, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY; AND RYAN AKAMINE, SUED IN BOTH PERSONAL AND PROFESSIONAL CAPACITY;<br><br>             Defendants. | CIV. NO. 21-00068 LEK-KJM |

## ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF

Before the Court is pro se Plaintiffs Dr. Alyssa Friedberg and Paul Shindell's ("Plaintiffs") Motion for Injunctive Relief ("Motion"), filed on April 27, 2021.  [Dkt. no. 41.]  Defendants Cathy Betts ("Betts"), Elladine Olevao ("Olevao"), Kintaro Yonekura ("Yonekura"), Iwalani Kaauwai-Herrod ("Kaauwai-Herrod"), Kirstie Kashima ("Kashima"), and the

Hawai`i Department of Human Services ("DHS" and collectively "DHS Defendants") filed their memorandum in opposition on May 21, 2021, and Plaintiffs filed their reply on June 1, 2021. [Dkt. nos. 54, 58.]  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  Plaintiffs' Motion is hereby denied for the reasons set forth below.

<u>**BACKGROUND**</u>

The operative pleading in this case is Plaintiffs' Amended Complaint and Request for Injunction ("Amended Complaint"), filed on April 19, 2021.  [Dkt. no. 34.] Plaintiffs, married residents of the Island of Kaua`i, are currently licensed resource caregivers,[1] and the instant case arises from the alleged refusal to place children with Plaintiffs.

The Amended Complaint alleges the following claims: violation of the Interstate Compact on the Placement of Children ("ICPC"), as enacted by the State of Hawai`i in Haw. Rev. Stat. Chapter 350E ("Count I"); [Amended Complaint at pgs. 4-6;] a 42 U.S.C. § 1983 claim alleging a violation of Plaintiffs' First

_____

[1] "Resource caregivers" are also known as "foster parents." or "foster care providers."  [Mem. in Opp., Decl. of Iwalani Kaauwai-Herrod ("Kaauwai-Herrod Decl.") at ¶ 7.]

Amendment rights ("Count II"); [id. at pg. 6;] a § 1983 claim
alleging a violation of Plaintiffs' Fourteenth Amendment rights
("Count III"); [id. at pgs. 6-7;] a claim alleging a violation
of Plaintiffs' rights under § 4 of the Hawai`i State
Constitution ("Count IV"); [id. at pg. 7;] a claim alleging a
violation of Plaintiffs' due process and equal rights under § 5
to the Bill of Rights to the Hawai`i State Constitution
("Count V"); [id. at pgs. 7-8;] a § 1983 claim alleging a
violation of 42 U.S.C. § 12203 and other relevant retaliation
laws ("Count VI"); [id. at pg. 8;] a claim under the Hawai`i
Whistleblowers' Protection Act ("HWPA"), Haw. Rev. Stat. § 378-
61, *et seq.* ("Count VII"); [id. at pgs. 8-9;] a § 1983 claim
alleging a violation of 18 U.S.C. § 241 and other relevant
conspiracy laws ("Count VIII"); [id. at pgs. 9-10;] a § 1983
claim alleging a violation of 18 U.S.C. § 242 and other relevant
laws regarding the deprivation of rights ("Count IX"); [id. at
pg. 10;] a claim allegation a violation of the Fostering
Connections to Success and Increasing Adoptions Act of 2008,
Public Law 110-351 ("Count X"); [id. at pg. 11;] a claim
alleging a violation of the Safe and Timely Interstate Placement
of Foster Children Act of 2006, Public Law 109-239 ("Count XI");
[id. at pgs. 12-13;] a claim alleging a violation of the
Adoption and Safe Families Act of 1997, Public Law 105-89
("Count XII"); [id. at pgs. 13-14;] and a loss of consortium

claim ("Count XIII"), [id. at pgs. 14-15].[2]  The allegations in the Amended Complaint that are relevant to the instant Motion are summarized below.

I.   **Plaintiffs' Evidence**

        Because Plaintiffs are proceeding pro se, their filings must be liberally construed.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  For purposes of the instant Motion only, this Court will treat Plaintiff's Amended Complaint and their Motion as declarations asserting the factual information contained in those filings.

        On August 31, 2020, Plaintiffs submitted an application to DHS to obtain a resource caregiver license. During the August 9, 2020 home study interview, Dr. Friedberg stated she uses marijuana two or three times a year for recreational purposes, and her most recent use was in June 2020. Shindell stated he uses marijuana once or twice a year, and his most recent use was also in June 2020.  Neither Dr. Friedberg nor Shindell hold a medical marijuana card.  Because of Plaintiffs' marijuana use, Partners in Development Foundation

_____

[2] Stacie Pascual ("Pascual"), James Walther ("Walther"), and Ryan Akamine ("Akamine") are also named as defendants in the Amended Complaint.  They filed their answer to the Amended Complaint on June 18, 2021.  [Dkt. no. 69.]  The DHS Defendants' memorandum in opposition to the instant Motion includes a declaration by Pascual, but neither Pascual, Walther, nor Akamine have filed a response to the Motion.

("PIDF") stated in its September 8, 2020 Resource Family Home Study ("9/8/20 Home Study") that it could not proceed with the process to license Plaintiffs as resource caregivers.  DHS contracts with PIDF to recruit potential resource caregivers and to complete assessments of persons who are interested in becoming licensed resource caregivers.  See Amended Complaint, Exh. A (DHS Administrative Appeals Office Notice of Administrative Hearing Decision, dated 12/3/20 ("12/3/20 Decision")) at 2-3.  A notice and a letter, both dated September 9, 2020, informed Plaintiffs that they were ineligible for a general resource caregiver license because of their marijuana use, pursuant to Haw. Admin. R. 17-1625-17(c)(9).[3]  No other reasons were cited for the denial of Plaintiffs' application.  See id. at 3.  Plaintiffs sought administrative review of the denial.

---

[3] Haw. Admin. R. 17-1625-17(c)(9) states:

> The resource family and all adult household members shall show evidence of being well-adjusted persons and have sufficient ability, training, and experience in caring for children and demonstrate the willingness and ability to work with the agency and other agencies and organizations.  They shall:

> . . . .

> (9)  Not **abuse substances,** such as illegal drugs or alcohol.

(Emphasis added.)

At the administrative hearing, the DHS representative confirmed that Plaintiffs' marijuana use was the only reason why their application was denied, and admitted that DHS did not attempt to determine whether Plaintiffs' use of marijuana constituted substance abuse.  The hearings officer found there was no evidence that either Dr. Friedberg or Shindell had a substance abuse issue.  [Id. at 4.]  The hearings officer ultimately ruled that DHS improperly denied Plaintiffs' application because Plaintiffs only used marijuana occasionally, and there was no evidence presented that Plaintiffs' use constituted substance abuse.  [Id. at 10 (citing Haw. Admin. R. §§ 17-1625-13, 17-1625-15, 17-1625-17).]

Plaintiffs state that, during a December 18, 2020 telephone call, Kaauwai-Herrod told Shindell that, in spite of the 12/3/20 Decision or any future court ruling, DHS would never place children in Plaintiffs' home, and it was within DHS's discretion to refuse to make a placement.[4]  During a December 21, 2020 telephone call, Olevao, who Plaintiffs state is the CWS Branch Administrator for the State of Hawai`i, told Plaintiffs the same thing.  During a January 21, 2021 videoconference call, Yonekura, DHS's Assistant Program Development Administrator,

---

[4] Kaauwai-Herrod is employed with the DHS, Social Services Division, Child Welfare Services ("CWS") Branch, Foster Care Program.  [Kaauwai-Herrod Decl. at ¶ 1.]  She supervises of the CWS staff on Kaua`i.  [Id. at ¶ 3.]

told Shindell the same thing.  Kaauwai-Herrod and Kashima were also present during the January 21, 2021 videoconference call. According to Plaintiffs, during each of these calls, Plaintiffs offered suggestions, including taking drug tests and providing additional character references, in an attempt to alleviate any concerns, but their suggestions were ignored.  [Amended Complaint at pgs. 18-19; Motion at 5-6.]  Plaintiffs allege it is not DHS's normal policy to either "blackball" licensed resource caregivers or tell licensed resource caregivers that DHS will never place a child in their home.  [Amended Complaint at pgs. 28-29.]

Plaintiffs also state that, during the January 21, 2021 videoconference, Yonekura stated DHS would not place children in Plaintiffs' home because he, Kaauwai-Herrod, and Kashima "decided that the denial of [Plaintiffs'] license and [their] administrative appeal which overturned the denial had strained the relationship between them and . . . a comfortable working relationship" was necessary for a placement.  [Id. at pg. 19.]  Plaintiffs argue the DHS Defendants have retaliated against them for filing, and prevailing in, the administrative appeal of the denial of their application for a general resource caregiver license.  Plaintiffs contend the stated reasons why DHS still refuses to place children in Plaintiffs' home are mere pretext.  Plaintiffs emphasize that they have communicated with

the DHS Defendants promptly and professionally at all relevant
times.  [Id. at pgs. 19-20.]  During the January 21, 2021
videoconference, Yonekura stated Plaintiffs met all of the
requirements for a general resource caregiver license, and that
the license would be issued that day.  [Id. at pgs. 20-21.]
However, "[w]hen Mr. Shindell asked what their license number
would be, Ms. Kashima replied in a very dismissive tone, 'It's
just a piece of paper.'"  [Id. at pg. 21.]  Plaintiffs argue
Kashima's statement was an attempt to mock the 12/3/20 Decision
and to "gloat" that Plaintiffs would never receive a placement.
[Id.]  DHS ultimately issued Plaintiffs a general resource
caregiver license that allows Plaintiffs to foster two children
between the ages of twelve and seventeen.  Plaintiffs have
repeatedly asked to have their license expanded to include
children between the ages of four and seventeen and to include
adoption, but the license has not been expanded, and Plaintiffs
have not been informed of any reason why DHS will not expand the
license.  [Id. at pg. 26.]  Plaintiffs state that, during the
application process for their resource caregiver license, they
were also asked about their desire to adopt.  [Motion at 4.]
Plaintiffs submit emails from February 2021 in which they ask
PIDF about how to expand the age range of children covered by
their resource caregiver license and to obtain approval for

adoption.  [Reply, Exh. U at PageID #: 890 (2/1/21 email from

Plaintiffs to Liane Asinsen of PIDF).]  Ms. Asinsen states:

> DHS makes the final determination on the age
> range you are licensed for, so please contact
> your licensing worker regarding this. . . .
> Also, as mentioned when we spoke previously, PIDF
> only completes home studies for foster care, not
> adoption.  The question about permanency in our
> home study refers to your willingness to consider
> adoption or legal guardianship if parental rights
> are terminated for a foster youth placed in your
> care.

[Id. at PageID #: 891 (2/2/21 email from Ms. Asinsen to

Shindell).]

Plaintiffs assert that most states use the same home

study and application process for prospective parents to apply

to become foster parents or adoptive parents.  Plaintiffs

therefore argue it should have been simple for DHS to use

Plaintiffs' home study to license them to be adoptive parents as

well as resource caregivers.  [Motion at 4.]

Because of the statements that DHS would never place

children in Plaintiffs' home, Plaintiffs attempted to register

for the United States Department of Health & Human Service's

program through its AdoptUSKids.org website ("AdoptUSKids").

However, during the January 21, 2021 videoconference, Yonekura

told Shindell DHS would not cooperate, such as by releasing

Plaintiffs' home study report, with AdoptUSKids or any other

adoption agencies.  Plaintiffs assert that such cooperation

between agencies is the normal practice.  AdoptUSKids emailed

Kashima questions about Plaintiffs on December 24, 2020,

January 1, 2021, and March 11, 2021, and AdoptUSKids also left

Kashima voicemail messages.  According to Plaintiffs, Kashima

did not respond to any of the messages.  [Amended Complaint at

pg. 20; Motion at 6.]  Plaintiffs state Kashima's failure to

respond to the questions that AdoptUSKids sent her prevented

them from pursuing their interest in adopting two brothers who

were in the South Dakota foster care system.  [Amended Complaint

at pgs. 30-31; Motion at 8-9.]

       In addition, Plaintiffs state they registered for the

Texas Department of Family & Planning Services' ("DFPS") Texas

Adoption Resource Exchange ("TARE") on February 3, 2021, but

Kaauwai-Herrod failed to respond to the Texas DFPS's request for

Plaintiffs' home study.  Plaintiffs also state they requested,

through Akamine, that DHS send their home study to California

Kids Connection because Plaintiffs were considering adopting

siblings in the California foster care system, but DHS never did

so.  According to Plaintiffs, California Kids Connection will

not accept home studies directly from the prospective families.

[Amended Complaint at pgs. 31-32; Motion at 10.]

       Apparently in preparation for their TARE registration,

on January 22, 2021, Plaintiffs sent Kashima an email to ask her

to send a copy of their home study to the Texas DFPS.  [Amended

Complaint at pg. 21; Motion at 9.]  That day, Kashima responded, stating "'we will not be sending or authorizing any of your requested information on any adoption/foster website or agency. Please do not send any additional requests as they will be denied.'"  [Amended Complaint at 21; Motion at 9.]  In a January 26, 2021 email, Kaauwai-Herrod added that the home study was owned by DHS, and she reiterated that DHS would not be forwarding the home study.[5]  Kaauwai-Herrod also stated in the email that she had been in contact with the Assistant Program Development Administrator - *i.e.*, Yonekura - who handles ICPC requests.  [Amended Complaint at pg. 21; Motion at 9.]  Pascual, the State's Deputy Compact Administrator, later told Plaintiffs that the ICPC had not been invoked.  [Amended Complaint at pg. 22.]  Plaintiffs argue that, because neither the ICPC nor Haw. Rev. Stat. Chapter 350E "state that anything must first be received before the compact is invoked," Pascual knowingly violated the ICPC/Chapter 350E.  [Id.]

---

[5] Plaintiffs assert DHS's current policy allows licensed resource caregivers who have not received a placement to purchase their home study.  Plaintiffs made multiple requests to do so, but the requests were not answered.  Kashima eventually sent Plaintiffs a redacted version of their home study on March 11, 2021, without requiring any payment.  [Amended Complaint at pg. 25.]  Plaintiffs also state the home study did not have Kashima's signature, and they allege it is DHS's typical practice to include such a signature.  [Id. at pg. 30.]  Further, Plaintiffs assert having a copy of [their] home study without DHS' support [is] relatively useless for adoption purposes."  [Id. at pg. 32.]

On January 24, 2021, Plaintiffs sent Betts an email, requesting a videoconference call to discuss possible solutions to the situation, but Betts never responded.  [Id.]  On January 28, 2021, Plaintiffs made verbal and written complaints to the DHS Civil Rights Compliance Office.  Plaintiffs alleged they were being discriminated against because of their Jewish religion and ancestry.  [Id. at pgs. 22-23; id., Exh. C (various email correspondence) at PageID #: 394-406.]  On February 27, 2021, Plaintiffs added a retaliation claim to their discrimination complaints.  [Amended Complaint at pg. 23.]  However, Plaintiffs state that, as of the filing of the Amended Complaint, the Civil Rights Compliance Office has not assigned an investigator to their complaint.  [Id. at pg. 33.]  Plaintiffs argue "[t]his tremendous delay . . . seems to be negligence and deliberate indifference by DHS."  [Id.]

Plaintiffs state they spoke to County of Kaua`i Mayor Derek Kawakami on March 1, 2021 at an event.  [Motion at 12.]  According to Plaintiffs, he "was appalled and told Mr. Shindell that there is tremendous need for foster parents on Kauai, especially for siblings and teenagers who are the hardest to find homes for."  [Id.]  Plaintiffs state Mayor Kawakami later told them in an email message that he tried to speak with DHS about Plaintiffs' situation, but he was told that DHS could not discuss the matter with him because of confidentiality concerns.

Plaintiffs responded to his message, stating he could tell DHS he had their permission to see any document about them.  Id.; see also Reply, Exh. R at PageID #: 866-67 (3/27/21 email from Derek Kawakami to Shindell, and undated response thereto).

Plaintiffs allege the stress, anxiety, and consumption of their time that has resulted from the discrimination, retaliation, and due process violations that they have suffered have resulted in: loss of consortium, both between Plaintiffs themselves and between Plaintiffs and the children they would have parented; insomnia suffered by Shindell; and lost opportunities that they gave up because they expected to become resource caregivers.  [Amended Complaint at pgs. 23-24.]

In the instant Motion, Plaintiffs ask this Court to issue an order requiring the following injunctive relief:

-that the DHS Defendants "treat [Plaintiffs] no better or worse than any other general licenses resource caregiver," including removing Plaintiffs from the blacklist and actively working to place foster children in Plaintiffs' home; [Motion at 2;]

-that the DHS Defendants expunge from Plaintiffs' current home study any mention of the September 8, 2020 denial of their license application because of Plaintiffs' marijuana use and any suggestion that Plaintiffs are substance abusers;

-that Kashima or another DHS employee respond to the questions that AdoptUSKids sent to Kashima, with the answers set forth in the Motion;

-that the DHS Defendants send Plaintiffs' current home study to the Texas DFPS, California Kids Connection, and to any other state or government official or agency that requests Plaintiffs' home study;

-that the DHS Defendants expand Plaintiffs' general resource
    caregiver license to allow them to foster and adopt
    children between the ages of four and seventeen;

-that the DHS Defendants correct errors in Plaintiffs' home
    study about their dogs; and

-that DHS provide Mayor Kawakami the information which he
    requested about Plaintiffs' issues.

## II.  <u>DHS Defendants' Evidence</u>

Kashima confirms that she was the licensing social
worker who was assigned to review Plaintiffs' resource caregiver
license application, and she reviewed Plaintiffs' 9/8/20 Home
Study.  [Mem. in Opp., Decl. of Kirstie Kashima ("Kashima
Decl.") at ¶¶ 4-5; Kashima Decl., Exh. 1 (9/8/20 Home Study).]
Kashima states:

> [She] denied the Plaintiffs' application for a
> general resource caregiver license **based solely
> on the admission of marijuana use,** as the foster
> program obtains federal funding, marijuana is
> illegal under federal laws, and it seemed
> unjustifiable to place an abused and/or neglected
> foster child in a home where the child could be
> exposed to second hand marijuana smoke or have
> access to marijuana.  [She] checked with [her]
> supervisor and she agreed with [Kashima's]
> decision to deny the application based on this
> marijuana use.

Kashima Decl. at ¶ 7 (emphasis added); <u>see also</u> Kaauwai-Herrod
Decl. at ¶ 3 (stating she is Kashima's supervisor), ¶ 9 (stating
she agreed with the initial denial of Plaintiffs' application).
Kashima states the denial of Plaintiffs' application was not

based, either in whole or in part, on their Jewish religion and ancestry.  [Kashima Decl. at ¶ 10.]

After the 12/3/20 Decision, a revised home study report was prepared, noting that the initial denial of Plaintiffs' application was overturned by a hearings officer and, in light of that decision, Plaintiffs now meet the requirements to be licensed resource caregivers.  [Id. at ¶ 9; id., Exh. 2 (Kashima's 3/11/21 email to Plaintiffs transmitting the revised home study report, dated 1/15/21 ("3/11/21 Email" and "Revised Home Study")).]

The DHS Defendants present evidence that PIDF "was contracted by the DHS to recruit, train, conduct home studies, and provide support services to" resource caregivers, but "PIDF does not perform adoption home studies for the DHS."  [Kaauwai-Herrod Decl. at ¶ 7.]  DHS does not obtain a home study about

> prospective adoptive parents unless (1) there is
> a specific Hawaii child that needs to be
> considered for adoption or permanency placement,
> or (2) there is a specific request from an ICPC
> member representative from another state about a
> Hawaii resident being considered for adopting a
> specific child from the other state.

[Id. at ¶ 10.]  Kaauwai-Herrod states that, in her position, she decides whether it is necessary to approve adoptive parents for a specific child.  She confirms that Plaintiffs are not currently being considered as prospective adoptive parents for any specific child on Kaua`i.  [Id. at ¶ 11.]

15

Kashima states she sent Plaintiffs' Revised Home Study directly to Plaintiffs, instead of sending it to the third-parties that had requested Plaintiffs' home study "because the third-party requests sought an 'adoption home study', and the PIDF home studies were not 'adoption' home studies, but were specifically for the Plaintiffs' application as resource caregivers . . . ."  [Kashima Decl. at ¶ 11.]  In addition, Kashima states that, in response to a March 16, 2021 email from Stacey Leidner of AdoptUSKids, she wrote in a March 17, 2021 email that DHS only approves adoptive homes when the child to be adopted is in the DHS system or when there is a request for approval through the ICPC process.  [Id. at ¶ 12; id., Exh. 3 (email chain between Kashima and Ms. Leidner).]  According to Kashima, "DHS did not want to contribute to any misunderstanding about the situation" because Ms. Leidner's email addressed an adoption process.  [Kashima Decl. at ¶ 12.]

Pascual confirms that, on January 27, 2021, she checked CWS's ICPC records, and there was no request from Texas pertaining to the two children who Plaintiffs were considering taking into their home.  [Mem. in Opp., Decl. of Stacie Pascual ("Pascal Decl.") at ¶¶ 6, 8.]  On February 1, 2021, Pascual sent an email to Shindell, explaining that the ICPC had not been invoked and encouraging him to work with the Texas DFPS. Pascual stated DHS would coordinate with the Texas DFPS once DHS

received an ICPC request from the Texas DFPS.  [Pascual Decl.,
Exh. 4 at PageID #: 804 (email from Pascual to Shindell).]  In
addition to being Hawaii's Deputy Compact Administrator for the
ICPC, Pascual is also Hawaii's Deputy Compact Administrator for
the Interstate Compact on Adoption and Medical Assistance
("ICAMA").  [Pascual Decl. at ¶ 1.]  Pascual states "[t]he ICAMA
applies to those children adopted pursuant to Adoption
Assistance Agreements between states and prospective adoptive
parents under the terms of Title IV-E of the Social Security
Act."  [Id. at ¶ 11.]  Pascual also states: the ICAMA has not
been invoked as to the children in Texas who Plaintiffs were
considering; the State of Texas has not identified Plaintiffs as
prospective adoptive parents; and no Adoption Assistance
Agreement has been executed between the State of Texas and
Plaintiffs.  [Id.]  Pascual received a copy of a March 11, 2021
email from Shindell to Amber Hart of the Texas DFPS regarding
Plaintiffs' home study.  The email included a chain of
correspondence between Plaintiffs and others, including Kashima,
dated from January 22, 2021 to February 10, 2021.  [Pascual
Decl., Exh. 5.]  Ms. Hart's February 8, 2021 email to Plaintiffs
indicates that Plaintiffs were looking into an adoption.  [Id.
at PageID #: 809 ("I want to thank you for your desires to adopt
from Texas.").]  Ms. Hart told Plaintiffs, "home studies are the
'property' of the child placing agency in which you are approved

17

through and it is at their discretion on who they release your
home study to." [Id.]  She stated that, if DHS was not willing
to provide Plaintiffs' home study for the Texas DFPS to consider
in connection with the children in whom Plaintiffs expressed
interest, "that [wa]s out of Texas's hands."  [Id.]

As to the children in California in whom Plaintiffs
have expressed interest, Pascual states DHS's ICPC office was
not aware of Plaintiffs' interest until the filing of the
Amended Complaint.  [Pascual Decl. at ¶ 13.]  Through the date
of the Pascual Declaration - May 19, 2021 - the office has
neither "received notification in the form of the ICPC-100A
form" nor received an ICPC request from the State of California
indicating an intent to place a child in Plaintiffs' home.
[Id.]  On May 14, 2021, DHS's ICPC office confirmed, through the
National Electronic Compact Exchange - which ICPC members use to
submit ICPC requests, that no request has been received from
California.  [Id. at ¶ 14.]

**STANDARD**

This Court has described the standards that apply to a
motion for a preliminary injunction as follows:

> "[I]njunctive relief is an extraordinary
> remedy that may only be awarded upon a clear
> showing that the plaintiff is entitled to
> such relief."  Winter v. Natural Res. Def.
> Council, Inc., 555 U.S. 7, 129 S. Ct. 365,
> 376, 172 L. Ed. 2d 249 (2008).  The standard
> for granting a preliminary injunction and

> the standard for granting a temporary
> restraining order are identical.  <u>See</u> <u>Haw.</u>
> <u>Cnty. Green Party v. Clinton</u>, 980 F. Supp.
> 1160, 1164 (D. Haw. 1997); Fed. R. Civ. P.
> 65.
>
> <u>Sakala v. BAC Home Loans Servicing, LP</u>, CV. No.
> 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D.
> Hawai`i Feb. 22, 2011) (alteration in original).
>
> > A plaintiff seeking a preliminary injunction
> > must establish that he is likely to succeed
> > on the merits, that he is likely to suffer
> > irreparable harm in the absence of
> > preliminary relief, that the balance of
> > equities tips in his favor, and that an
> > injunction is in the public interest.  <u>Am.</u>
> > <u>Trucking Ass'ns v. City of Los Angeles</u>, 559
> > F.3d 1046, 1052 (9th Cir. 2009) (quoting
> > <u>Winter v. Natural Res. Def. Council, Inc.</u>,
> > 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed.
> > 2d 249 (2008)) (explaining that, "[t]o the
> > extent that [the Ninth Circuit's] cases have
> > suggested a lesser standard, they are no
> > longer controlling, or even viable"
> > (footnote omitted)); <u>see also</u> <u>Winter</u>, 129 S.
> > Ct. at 374-76 (holding that, even where a
> > likelihood of success on the merits is
> > established, a mere "possibility" of
> > irreparable injury is insufficient to
> > warrant preliminary injunctive relief,
> > because "[i]ssuing a preliminary injunction
> > based only on a possibility of irreparable
> > harm is inconsistent with [the Supreme
> > Court's] characterization of injunctive
> > relief as an extraordinary remedy that may
> > only be awarded upon a clear showing that
> > the plaintiff is entitled to such relief").
>
> <u>Painsolvers, Inc. v. State Farm Mut. Auto. Ins.</u>
> <u>Co.</u>, 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i
> 2010) (footnote and some citations omitted)
> (alterations in original). . . .

<u>Kelley O'Neil's Inc. v. Ige</u>, CIVIL NO. 20-00449 LEK-RT, 2021 WL

767851, at *4 (D. Hawai`i Feb. 26, 2021) (alterations in <u>Kelley</u>

O'Neil's) (some citations omitted).  When the government is a
party, the last two factors, balance of equities and public
interest, merge.  <u>Drakes Bay Oyster Co. v. Jewell</u>, 747 F.3d
1073, 1092 (9th Cir. 2014).

<u>DISCUSSION</u>

I.   <u>Lack of Placement</u>

        The Motion's primary request is for a Court order
requiring DHS to actively work to place foster children in
Plaintiffs' home.  However, the fact that Plaintiffs have a
general resource caregiver license does not, standing alone,
**require** DHS to place a foster child in Plaintiffs' home.  <u>See</u>
Haw. Admin. R. 17-1625-10(h) ("The licensing of a resource family
home shall not obligate the agency to place children in the
home.  The license shall mean only that the agency has evaluated
the resource family home and has determined that the resource
family home meets the rules governing resource family homes.").
Plaintiffs recognize this fact and argue that they are being
treated differently from other licensed resource caregivers
because of their Jewish religion and/or ancestry and because of
the DHS Defendants' retaliation for Plaintiffs' challenge to the
initial denial of their application for a general resource
caregiver license.  The DHS Defendants have presented testimony
that Plaintiffs' application was initially denied based solely
on Plaintiffs' marijuana use, and neither Plaintiffs' religion

nor their ancestry was a factor in the denial.  See Kashima Decl. at ¶¶ 7, 10.  Although the DHS Defendants have not presented evidence specifically addressing the reasons why DHS has not placed a foster child in Plaintiffs' home since Plaintiffs received their resource caregiver license, it can be reasonably inferred from the record that DHS's position remains that Plaintiffs' marijuana use makes it unreasonable to place a foster child in Plaintiffs' home.

Plaintiffs' position is effectively that other licensed resource caregivers who use marijuana, but are not of Jewish ancestry or religion and/or have not appealed a prior denial of their license applications, have foster children placed in their homes.  Plaintiffs have not presented any evidence establishing such placements.  The only evidence that Plaintiffs have identified to support their position that their failure to receive a placement is the result of discrimination and/or retaliation are:

-Kashima's failure to wish them "Merry Christmas" after they wished her "Merry Christmas" at the end of a December 24, 2020 telephone call; [Amended Complaint at pg. 27; id., Exh. B (dkt. no. 34-6) at PageID #: 393 (email from Shindell, dated 12/24/20);]

-their 9/8/20 Home Study has the words "Jewish, faith, Shilom, synagogue, religiously, Agnostic, Hebrew, mitzvah, Bubbi, Zadi, Hillel, religion, heritage, holidays, Passover, Judaism, church, and religious" fifty times, and the Revised Home Study has them fifty-two times; [Amended Complaint at pg. 27;]

-there are statements in both versions of their home study about the values that Plaintiffs' respective parents taught them, and Plaintiffs contend such statements perpetuate "damaging Jewish stereotypes"; [id. at pgs. 27-28;] and

-Steve Krausz, Assistant Director of the Jewish Children's Adoption Network, told Plaintiffs their home study was much longer than he was used to and contained "some details [about Plaintiffs'] past [that] were excessive and intrusive," [id. at pg. 30; Amended Complaint, Exh. D at PageID #: 440 (email dated 3/17/21 to Shindell from Steve Krausz)].

Plaintiffs' 9/8/20 Home Study and their Revised Home Study are each twenty pages long, and both are extremely detailed, including multiple references to Plaintiffs' Jewish faith and ancestry. First, while this Court appreciates that the events at issue in this case are intensely personal to Plaintiffs, this Court disagrees with Plaintiffs that the statements in the two versions of the home study relating to Plaintiffs' faith and ancestry are derogatory or the perpetuation of stereotypes. Further, Plaintiffs have not presented any evidence that, when a person applies for a general resource caregiver license, the home study will be shorter and will have less references to the applicant's faith and ancestry if the applicant is not Jewish. Although he expressed some criticism about Plaintiffs' home study, Mr. Krausz did not indicate that he had prior experience with home studies prepared in Hawai`i. See Amended Complaint, Exh. D at PageID #: 440 ("[M]aybe that's the way they do things in Hawaii. Maybe most

Hawaiians have complicated pasts and they feel it is necessary to go into such great detail.").

Plaintiffs argue Kashima's failure to wish them "Merry Christmas" indicates that it was at Kashima's "top of mind" that Plaintiffs are Jewish, and that was also "likely [for] many of the DHS workers involved in this case."  [Amended Complaint, Exh. B at PageID #: 393.]  Based on the contents of the 9/8/20 Home Study, it is reasonable to infer that the DHS employees who worked on Plaintiffs' case knew that Plaintiffs were Jewish. However, there is no evidence to support Plaintiffs' assertion that Plaintiffs' Jewish faith/ancestry dominated all decisions made by those employees.

In addition, Plaintiffs have not presented any evidence supporting their position that the DHS Defendants are refusing to place a foster child in Plaintiffs' home as an act of retaliation for Plaintiffs' challenge to the initial denial of their license application.

This Court concludes that Plaintiffs have failed to establish that they are likely to succeed on the merits of their claims that are based on their allegation that the DHS Defendants' refusal to place a foster child in Plaintiffs' home is either an act of discrimination based on Plaintiffs' Jewish faith and/or ancestry or an act of retaliation for Plaintiffs' challenge to the initial denial of their license application.

23

Because Plaintiffs have failed to establish a likelihood of success on the merits, it is not necessary to address the other preliminary injunction requirements. See Winter, 555 U.S. at 20 (listing requirements for a preliminary injunction, all of which must be established). Plaintiffs' request for a preliminary injunction ordering the DHS Defendants to actively work to place foster children in Plaintiffs' home is therefore denied.

## II.  Other Requests

Plaintiffs' other requests are related to their primary request. Plaintiffs' position is that, because of Plaintiffs' Jewish faith and/or ancestry, and/or because of their challenge to the initial denial of their license application, the DHS Defendants: have not further amended Plaintiffs' Revised Home Study; have not expanded the scope of Plaintiffs' general resource caregiver license; and have not responded to, or provided unacceptable responses to, various correspondence about Plaintiffs. Plaintiffs have not presented any evidence supporting their position that resource caregivers who are not Jewish and resource caregivers who have not contested prior licensing denials were treated more favorably than Plaintiffs.

Further, to the extent that Plaintiffs have requested that their home study be used to authorize them to adopt, the DHS Defendants have presented evidence that "DHS is not an

adoption agency," [Kaauwai-Herrod Decl. at ¶ 10,] and that a home study regarding Plaintiffs' potential as adoptive parents was not warranted, see id. at ¶¶ 10-11; Pascual Decl. at ¶¶ 6, 13-14. The DHS Defendants have also presented evidence that Plaintiffs' home study was prepared by PIDF specifically for Plaintiffs' application to be resource caregivers, and thus they are not adoption home studies. [Kashima Decl. at ¶ 11.] Plaintiffs have not presented evidence to contradict this, except for their own statements that they believe it should have been simple for DHS to use Plaintiffs' home study to license them to be adoptive parents as well as resource caregivers. See Motion at 4. Similarly, the record does not support Plaintiffs' position that various email correspondence from other agencies outside of Hawai`i seeking information about Plaintiffs were sufficient to invoke the ICPC. For example, Ms. Hart stated: "I understand that Ms. Pascual has stated that Texas would need to submit a form stating our intention to possibly place [specific children] in [Plaintiffs'] home. That is not the way Texas handles these types of inquiries." [Pascual Decl., Exh. 5 at PageID #: 809 (email dated 2/8/21 from Ms. Hart to Plaintiffs).] She also told Plaintiffs that "Texas will only submit an ICPC request if you are matched [with a child after going] through the entire selection process . . . ." [Id.]

However, these statements do not support Plaintiffs' position that DHS should not have required an ICPC form to release Plaintiffs' home study because Ms. Hart also stated: "Typically how an inquiry goes for our children is someone **with an approved adoptive home study** will create a family profile and inquire on the child(ren) through our TARE system or one of our partnering sites." [Id. (emphasis added).]  When Ms. Hart stated Texas does not normally submit an ICPC form when seeking information from another state, she assumed that Plaintiffs had an **adoptive** home study from DHS, which Plaintiffs did not have. There is no evidence to contradict the DHS Defendants' evidence that, in order for DHS to obtain an adoptive home study about Plaintiffs for use in a potential adoption of a child from another state, DHS had to receive an ICPC request.

For all of the foregoing reasons, Plaintiffs have failed to establish a likelihood of success on the merits as to their other requests for relief in the Motion.  Because Plaintiffs have failed to establish likelihood of success on the merits, it is not necessary to address the other preliminary injunction requirements.  The Motion is therefore denied as to Plaintiffs' other requests for a preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Injunctive Relief, filed April 27, 2021, is HEREBY DENIED in its entirety.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 30, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DR. ALYSSA FRIEDBERG, ET AL. VS. CATHY BETTS, ET AL; CV 21-00068 LEK-KJM; ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF**