UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| DR. ALYSSA FRIEDBERG AND PAUL SHINDELL,<br><br>          Plaintiffs,<br><br>     vs.<br><br>CATHY BETTS, ELLADINE OLEVAO, KINTARO YONEKURA, IWALANI KAAUWAI-HERROD, KIRSTIE KASHIMA, HAWAII DEPARTMENT OF HUMAN SERVICES, STACIE PASCUAL, JAMES WALTHER, AND RYAN AKAMINE,<br><br>          Defendants. | CIV. NO. 21-00068 LEK-KJM |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On April 13, 2022, Defendants Cathy Betts ("Betts"), Elladine Olevao ("Olevao"), Kintaro Yonekura ("Yonekura"), Iwalani Kaauwai-Herrod ("Kaauwai-Herrod"), Kirstie Kashima ("Kashima"), State of Hawai`i Department of Human Services ("DHS"), and Stacie Pascual ("Pascual" and all collectively "Defendants") filed their Motion for Summary Judgment ("Motion"). [Dkt. no. 180.] Pro se Plaintiffs Dr. Alyssa Friedberg ("Dr. Friedberg") and Paul Shindell ("Shindell" and collectively "Plaintiffs") filed their memorandum in opposition on May 18, 2022, and Defendants filed their reply on May 27, 2022. [Dkt. nos. 192, 195.] Plaintiffs filed a surreply on June 6, 2022. [Dkt. no. 200.] The Court has found the Motion suitable for disposition without a hearing, pursuant to Local

Rule 7.1(c). <u>See</u> Minute Order, filed 4/15/22 (dkt. no. 183), at PageID.3211.

On July 21, 2022, an entering order was issued informing the parties of this Court's rulings on the Motion. [Dkt. no. 226.] The instant Order supersedes that entering order. For the reasons set forth below, Defendants' Motion is hereby granted, and summary judgment is granted in Defendants' favor as to all of Plaintiffs' claims.

<u>**BACKGROUND**</u>

Plaintiffs initiated this action on January 29, 2021. <u>See</u> Complaint and Request for Injunction, filed 1/29/21 (dkt. no. 1). The operative pleading is Plaintiffs' Amended Complaint and Request for Injunction, filed December 31, 2021 ("Third Amended Complaint"). [Dkt. no. 147.] The crux of Plaintiffs' claims is that, although they have been granted a license to be resource caregivers ("RCGs"), formerly known as foster parents, Defendants have denied Plaintiffs any placement of a foster child in their home. Plaintiffs also allege Defendants' actions and omissions have impaired Plaintiffs' efforts to secure a foster or adoption placement through agencies that are based outside of the State of Hawai`i.

I.  **Summary of Relevant Factual Background**

Plaintiffs began the process to become licensed RCGs in 2020. On their application, they stated one of the reasons

they wanted to become RCGs was to practice for when they had their own children.  [Defendants' Concise Statement of Material Facts in Support of Motion for Summary Judgment, filed 4/13/22 (dkt. no. 181) ("Defs.' CSOF"), at ¶ 1; *Pro Se* Plaintiffs' Reply to Concise Statement and Own Fact Assertions, filed 5/18/22 (dkt. no. 193) ("Pltfs.' CSOF"), at Fact 1 (disputing Defs.' ¶ 1 on other grounds).]  As part of Plaintiffs' application process, Partners in Development Foundation ("PIDF"), a DHS contractor, performed a home study.  [Defs.' CSOF at ¶ 2; Pltfs.' CSOF at Fact 2 (disputing Defs.' ¶ 2 on other grounds); Defs.' CSOF, Decl. of Kirstie Kashima ("Kashima Decl."), Exh. C (Resource Family Home Study, dated 9/8/20 ("Home Study")).]  The Home Study stated: Dr. Friedberg confirmed that she last smoked marijuana in June 2020 for recreational use, she smoked marijuana two or three times a year, and she did not have a medical marijuana card; [Kashima Decl., Exh. C at 4;] and Shindell confirmed that he last smoked marijuana in June 2020, he smoked marijuana once or twice a year, and he did not have a medical marijuana card, [id. at 8-9]  The Home Study stated, that, because the use of marijuana was prohibited under federal law, Plaintiffs were informed that their family could not proceed with the process to obtain a general license to be RCGs. [Id. at 4, 8-9, 18.]

DHS's stated reason for denying Plaintiffs' application for a RCG license was their marijuana use, and DHS cited Haw. Admin. R. § 17-1625-17(c)(9).[1]  [Defs.' CSOF at ¶ 3; Pltfs.' CSOF at Fact 3 (admitting Defs.' ¶ 3).]  DHS was also concerned about the fact that one of the reasons that Plaintiffs wanted to become RCGs was to practice for having their own children.  [Defs.' CSOF at ¶ 4; Pltfs.' CSOF at Fact 4 (admitting those portions of Defs.' ¶ 4).]

Plaintiffs appealed the denial of their application, and the hearings officer who decided their appeal ruled that, while Plaintiffs **used** marijuana, they did not **abuse** marijuana, and therefore § 17-1625-17(c)(9) could not serve as the basis to deny Plaintiffs' application.  The hearings officer ordered DHS to issue a general RCG license to Plaintiffs, and DHS did so.  See Defs.' CSOF at ¶ 6; Pltfs.' CSOF at Fact 6 (admitting Defs.'

---

[1] Haw Admin. R. § 17-1625-17(c) states:

> The resource family and all adult household members shall show evidence of being well-adjusted persons and have sufficient ability, training, and experience in caring for children and demonstrate the willingness and ability to work with the agency and other agencies and organizations.  They shall:
>
> . . . .
>
> (9) Not abuse substances, such as illegal drugs or alcohol.

4

¶ 6); <u>see also</u> Mem. in Opp. CSOF, Exh. N (Notice of
Administrative Hearing Decision, dated 12/3/20); <u>id.</u>, Exh. K at
PageID.3554-55 (transmittal letter dated 1/26/21 and Plaintiffs'
Certificate of Approval as a resource family for two males or
females from ages twelve to seventeen).  However, having a
general RCG license does not guarantee the placement of a foster
child in the home.  [Defs.' CSOF at ¶ 7; Pltfs.' CSOF at Fact 7
(admitting Defs.' ¶ 7).]  PIDF subsequently prepared a Revised
Resource Family Home Study ("Revised Home Study"), which
reflected that the hearings officer overturned the denial of
Plaintiffs' license application and that Plaintiffs met the
requirements for a RCG license.  [Kashima Decl. at ¶ 10.[2]]

Even after Plaintiffs were licensed RCGs, "DHS
continued to be uncomfortable with placing children in the
Plaintiffs' home" because

> DHS did not want to take children out of their
> homes where illegal drugs are being used - a root
> cause of why many children are removed in the
> first place - and knowingly place them in a home
> with a history of drug use[, and because of] DHS'
> . . . concern . . . that the Plaintiffs'
> motivation was not to help abused and neglected
> children but rather to help themselves as they
> "practice" for having their own children.

---

[2] Kashima is a Foster Care Licensing Social Worker with
DHS's Social Services Division, Child Welfare Services Branch
("CWS"), Foster Care Program.  [Kashima Decl. at ¶ 1.]

[Defs.' CSOF, Decl. of Elladine Olevao ("Olevao Decl.") at
¶ 10.[3]]  Over the course of its interactions with Plaintiffs, DHS
also became concerned about their willingness and ability to
work with DHS, other agencies, and other organizations, which is
also one of the § 17-1625-17(c) requirements.  See id. at ¶ 11.

        Plaintiffs' strained interactions with DHS included
"multiple requests to DHS to send their home study to out-of-
state adoption agencies even after DHS informed them several
times that it is not authorized to do so[.]"  [Id. at ¶ 12.]  On
March 11, 2021, in response to these requests, Kashima sent
Plaintiffs a redacted copy of the Revised Home Study.  [Kashima
Decl. at ¶ 12.]  Kashima did not send the Revised Home Study
directly to third-parties "because the third-party requests
sought an 'adoption home study,' and the PIDF home studies were
not 'adoption' home studies, but were specifically for the
Plaintiffs' application as resource caregivers or foster
parents.  DHS approval of a General License for a Resource
Caregiver is not an approval for adoption."  Id.; see also,
e.g., Mem. in Opp., Exh. V (email, dated 6/1/21 from Whitney R.
Smith, Adoption Consultant Supervisor, Northern Regions, Indiana
Department of Child Services, to Plaintiffs and Brandi Yamamoto

---

        [3] Olevao is the CWS Branch Administrator.  [Olevao Decl. at
¶ 1.]

of DHS, requesting that Ms. Yamamoto, as Plaintiffs' "adoption agency contact[,]" send a copy of Plaintiffs' home study).

As of the time that the Motion was filed, DHS had not placed any children in Plaintiffs' home.  See Defs.' CSOF at ¶ 11; Pltfs.' CSOF at Fact 11 (admitting Defs.' ¶ 11).

Plaintiffs filed a civil rights complaint with DHS alleging various violations of their rights during the licensing process.  See Mem. in Opp., Exh. W (letter dated 2/12/21 to Dr. Friedberg from Brenna Hashimoto, DHS Human Resources Officer, acknowledging the receipt of her discrimination complaint).  Plaintiffs argue their rights were violated further during the investigation into their civil rights complaint.  For example, Plaintiffs argue the investigation was handled internally by DHS personnel, although an outside investigator was originally sought because of the conflict of interest, and the investigation was not completed within 180 days, as required by DHS regulations.  See id., Exh. E (trans. excerpt of 2/15/22 depo. of Lisa Amador ("Amador Depo.")) at 14-15, 18-19l; id., Exh. R (trans. excerpt of 12/20/21 depo. of Elladine Olevao ("Olevao Depo.")) at 163-67;[4] id., Exh. T (miscellaneous DHS records) at PageID.3776-79.

[4] Lisa Amador is an employee of the DHS, Social Services Division ("SSD") who was assigned to the investigation.  [Mem. in Opp., Exh. E (Amador Depo.) at 18-19; id., Exh. R (Olevao Depo.) at 164.]

## II.  **Procedural Background**

The Third Amended Complaint alleges the following claims: violations of the Interstate Compact on the Placement of Children, as enacted in Haw. Rev. Stat. Chapter 350E ("Count I"); a 42 U.S.C. § 1983 claim alleging violations of Plaintiffs' First Amendment right to freedom of religion ("Count II"); a § 1983 claim alleging violations of Plaintiffs' Fourteenth Amendment right to due process ("Count III"); a claim alleging violations of Plaintiffs' rights under the Bill of Rights to the Hawai`i State Constitution to freedom of religion, freedom of speech, freedom of the press, freedom of assembly, and freedom to petition the government ("Count IV"); a claim alleging violations of Plaintiffs' rights under the Bill of Rights to the Hawai`i State Constitution to due process and equal protection ("Count V"); a § 1983 claim alleging retaliation and coercion, in violation of 42 U.S.C. § 12203 ("Count VI"); a claim under the Whistleblowers' Protection Act, Haw. Rev. Stat. § 378-61, *et seq.*, ("Count VII"); a § 1983 claim alleging violations of 18 U.S.C. § 241 ("Count VIII"); a § 1983 claim alleging violations of 18 U.S.C. § 242 ("Count IX"); a claim alleging violations of Public Law 110-351, the Fostering Connections to Success and Increasing Adoptions Act of 2008 ("Adoptions Act" and "Count X"); a claim alleging violations of Public Law 109-239, the Safe and Timely Interstate Placement of

Foster Children Act of 2006 ("Interstate Placement Act" and
"Count XI"); a claim alleging violations of Public Law 105-89,
the Adoption and Safe Families Act of 1997 ("Safe Families Act"
and "Count XII"); a loss of consortium claim ("Count XIII");
negligence claims ("Counts XIV and XV"); and a § 1983 claim
alleging violations of Plaintiffs' rights under the Ninth
Amendment ("Count XVI").  Plaintiffs seek injunctive and
declaratory relief, as well as special damages, general damages,
punitive damages, and an award of litigation costs.  [Third
Amended Complaint at pgs. 45-48.]

Plaintiffs' claims alleging religious discrimination,
*i.e.*, Count II, and a portion of Count IV, have been dismissed.
See Order Granting Plaintiffs' Motion for Voluntary Nonsuit for
James Walther and Ryan Akamine for All Claims and Voluntary
Nonsuit for Religious Discrimination Claims Against All
Defendants, filed 5/3/22 (dkt. no. 187).  In the instant Motion,
Defendants seek summary judgment in their favor as to all of
Plaintiffs' remaining claims.

**DISCUSSION**

I.  **Plaintiffs' Fed. R. Civ. P. 56(d) Request**

Plaintiffs argue Defendants' Motion should be denied
at this time because: Defendants' counsel would not allow
Plaintiffs to depose Betts; Olevao was presented for deposition
as the DHS Fed. R. Civ. P. 30(b)(6) witness, but she was

unprepared to testify; and, at the time Plaintiffs filed their memorandum in opposition to the Motion, they had a motion to compel discovery pending before the magistrate judge. See Mem. in Opp. at 14-15; see also 6th Motion to Compel Discovery and Deny or Defer Motion For Summary Judgement Pursuant to FRCP 56(d)(1), filed 5/12/22 (dkt. no. 188) ("Sixth Motion to Compel").

Fed. R. Civ. P. 56(d)(1) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it . . . ."

First, the magistrate judge did not grant Plaintiffs any of the relief that they sought in the Sixth Motion to Compel. See Order Denying in Part Plaintiffs' Sixth Motion to Compel Discovery and Deny or Defer Motion for Summary Judgment Pursuant to FRCP 56(d)(1), filed 6/13/22 (dkt. no. 203) ("6/13 Order"). Plaintiffs filed objections to the magistrate judge's 6/13 Order, but the Objections were denied and the 6/13 Order was affirmed. See Plaintiffs' Objection to Orders ECF 203, filed 6/27/22 (dkt. no. 213) ("Objections"); Minute Order, filed 11/23/22 (dkt. no. 228) (denying the Objections and affirming the 6/13 Order). Thus, the discovery issues that Plaintiffs raised in the Sixth Motion to Compel do not warrant deferring consideration of the Motion or denying the Motion.

10

As to the other discovery that Plaintiffs describe in their Rule 56(d)(1) request, they have failed to establish that the facts they believe they will be able to elicit in further discovery "are essential to oppose summary judgment."  See Stevens v. Corelogic, Inc., 899 F.3d 666, 678 (9th Cir. 2018). Plaintiffs' request under Rule 56(d)(1) is therefore DENIED, and the merits of Defendants' Motion will be ruled upon at this time.

## II.   **Eleventh Amendment**

Defendants first argue that Plaintiffs' claims against DHS and the individual defendants, in their official capacity, are barred by the State of Hawaii's ("the State") Eleventh Amendment immunity.  "It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court."  Sato v. Orange Cnty. Dep't of Educ., 861 F.3d 923, 928 (9th Cir. 2017) (quotation marks and citation omitted); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (citations and internal quotation marks omitted)).

11

A.  **DHS**

1.  **Federal Law Claims**

"DHS, as an agency of the state, is immune from claims for monetary damages and other retrospective relief unless an exception to Eleventh Amendment immunity applies." Campbell v. Dep't of Hum. Servs., 349 F. Supp. 3d 1019, 1023 (D. Hawai`i 2018).  Counts III, VI, VIII, IX, and XVI assert § 1983 claims. The State has not waived its sovereign immunity from § 1983 claims, and Congress did not abrogate state sovereign immunity when it enacted § 1983.  See, e.g., Sheikh v. Haw. Dep't of Hum. Servs., Civil No. 12-00701 DKW-BMK, 2014 WL 1322496, at *2 (D. Hawai`i Mar. 31, 2014) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989)).

Count X asserts violations of the Adoptions Act, which was enacted to, among other things, "improve outcomes for children in foster care." See Adoptions Act, Pub. L. No. 110-351, 122 Stat. 3949, 3949.  The Adoptions Act expanded the requirements that states must comply with in order to receive federal funding for foster care and adoption services.  See, e.g., Brackeen v. Zinke, Civil Action No. 4:17-cv-00868-O, 2018 WL 10561971, at *3 (N.D. Tex. July 24, 2018).  Even assuming, for purposes of the instant Motion, that the State and/or DHS receive federal funding under the Adoptions Act,

> [a] State or state agency's acceptance of federal
> funds does not, in of itself, waive its sovereign
> immunity.  <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651,
> 673 (1974) ("The mere fact that a State
> participates in a program through which the
> Federal Government provides assistance for the
> operation by the State of a system of public aid
> is not sufficient to establish consent on the
> part of the State to be sued in the federal
> courts."); <u>Sossamon [v. Texas]</u>, 563 U.S. [277,]
> 290 (2011) ("[An] implied-contract-remedies
> proposal cannot be squared with our longstanding
> rule that a waiver of sovereign immunity must be
> expressly and unequivocally stated in **the text of
> the relevant statute**." (emphasis added)).

<u>McCoy v. Haw. Dep't of Hum. Serv.</u>, CIV. NO. 21-00063 LEK-RT,
2021 WL 5040197, at *6 (D. Hawai`i Oct. 29, 2021) (emphasis and
some alterations in <u>McCoy</u>).  Nothing in the language of the
Adoptions Act indicates that Congress abrogated the states'
sovereign immunity, and Plaintiffs have not identified any
evidence that the State has waived its sovereign immunity and
consented to suit under the Adoptions Act.

Similarly, neither the Interstate Placement Act, Pub.
L. No. 109-239, 120 Stat. 508, nor the Safe Families Act, Public
L. No. 105-89, 111 Stat. 2115, contains an abrogation of the
states' sovereign immunity, and Plaintiffs have not identified
any evidence that the State has waived its sovereign immunity
and consented to suit under either of those acts.

Because Congress has not abrogated the states'
sovereign immunity, and the State has not consented to suit, as
to the type of federal law claims asserted in this case, the

13

Eleventh Amendment precludes Plaintiffs' federal law claims against DHS, which is a state agency.  There are no genuine issues of material fact, and Plaintiffs' claims against DHS in Counts III, VI, VIII, IX, X, XI, XII, and XVI fail as a matter of law.  DHS is therefore entitled to summary judgment as to those claims.  <u>See</u> Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

### 2.   <u>State Law Claims</u>

Plaintiffs' state law claims against DHS are also barred by the Eleventh Amendment because, "[a]lthough Hawaii has waived its sovereign immunity as to some state tort and statutory claims, it has done so solely with respect to state court actions."  <u>See</u> <u>Beckmann v. Ito</u>, 430 F. Supp. 3d 655, 678 (D. Hawai`i 2020) (citations omitted); <u>see also</u> Haw. Rev. Stat. §§ 661-1, 661-2, 661-3.  There are no genuine issues of material fact, and Plaintiffs' claims against DHS in Counts I, IV, V, VII, XIII, XIV, and XV fail as a matter of law.  DHS is therefore entitled to summary judgment as to those claims.

### B.   <u>Individual Defendants in Their Official Capacities</u>

Plaintiffs' Third Amended Complaint does not specify whether they are suing Betts, Olevao, Yonekura, Kaauwai-Herrod, Kashima, and Pascual in their individual capacities, their

14

official capacities, or both.  Because Plaintiffs are proceeding pro se, their pleadings must be liberally construed.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  The Third Amended Complaint is therefore liberally construed as asserting claims against Betts, Olevao, Yonekura, Kaauwai-Herrod, Kashima, and Pascual in their individual capacities and in their official capacities.

Plaintiffs' claims against Betts, Olevao, Yonekura, Kaauwai-Herrod, Kashima, and Pascual, in their official capacities (collectively "Official Capacity Defendants"), are also barred by the Eleventh Amendment, except as to the portions of Plaintiffs' claims "seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law."  See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 865 (9th Cir. 2016) (citing Ex Parte Young, 209 U.S. 123, 149-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908)).  This is so because, "[g]enerally speaking, 'a suit [brought] against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.'"  Seven Up Pete Venture v. Schweitzer, 523 F.3d 948, 952-53 (9th Cir. 2008) (quoting Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).  Thus, Plaintiffs' claims

15

against the Official Capacity Defendants that seek monetary damages or other retrospective relief cannot proceed.

Plaintiffs' state law claims against the Official Capacity Defendants are barred for the same reason set forth as to Plaintiffs' state law claims against DHS.

There are no genuine issues of material fact, and Plaintiffs' state law claims and federal law claims for damages and other retrospective relief against the Official Capacity Defendants fail as a matter of law.  The Official Capacity Defendants are entitled to summary judgment as to those claims.

III. **Qualified Immunity**

Betts, Olevao, Yonekura, Kaauwai-Herrod, Kashima, and Pascual, in their individual capacities ("Individual Capacity Defendants") are not protected by the Eleventh Amendment. Defendants argue the Individual Capacity Defendants are entitled to summary judgment as to Plaintiffs' § 1983 claims against them based on sovereign immunity.  [Motion, Mem. in Supp. at 9.] This district court has stated:

> "Qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Shafer v. County of Santa Barbara, 868 F.3d 1110, 1115 (9th Cir. 2017) (internal quotation marks and citation omitted).  "To determine whether qualified immunity applies in a given case, [courts] must determine: (1) whether a public official has

16

> violated a plaintiff's constitutionally protected
> right; and (2) whether the particular right that
> the official has violated was clearly established
> at the time of the violation." Id. (citing
> Kirkpatrick v. County of Washoe, 843 F.3d 784,
> 788 (9th Cir. 2016) (en banc)).  For a right to
> be clearly established, there need not be "a case
> directly on point, but existing precedent must
> have placed the statutory or constitutional
> question beyond debate." Ashcroft v. al-Kidd,
> 563 U.S. 731, 741 (2011) (citations omitted).
> "Put simply, qualified immunity protects 'all but
> the plainly incompetent or those who knowingly
> violate the law.'" Mullenix v. Luna, 577 U.S. 7,
> 12 (per curiam) (quoting Malley v. Briggs, 475
> U.S. 335, 341 (1986)).

Burton v. City & Cnty. of Haw., CIVIL NO. 20-00208 JAO-RT, 2022

WL 280999, at *10 (D. Hawai`i Jan. 31, 2022) (alteration in

Burton).  District courts "have discretion to decide which of

the two prongs of qualified-immunity analysis to tackle first."

Al-Kidd, 563 U.S. at 735 (citing Pearson v. Callahan, 555 U.S.

223, 236 (2009)).

There is no controlling case law recognizing that a

person who is licensed to serve as a RCG or foster parent has a

constitutional right to the placement of a foster child.  The

Ninth Circuit has recognized constitutional rights of legal

guardians after placement.  See, e.g., Sampson v. Cnty. of Los

Angeles ex rel. Los Angeles Cnty. Dep't of Child. & Fam. Servs.,

974 F.3d 1012, 1022 (9th Cir. 2020) (holding that Sampson,

H.S.'s aunt and legal guardian, had a clearly established "First

Amendment right to criticize official conduct of public

officials without being subject to the threat of losing custody"
at the time that "Defendants sought and obtained a warrant to
remove H.S. from Sampson's custody"); Costanich v. Dep't of Soc.
& Health Servs., 627 F.3d 1101, 1108 (9th Cir. 2010) (holding,
in a § 1983 action brought by a foster parent/guardian who had
her foster care license revoked and termination of guardianship
proceedings initiated against her, "that deliberately
fabricating evidence in civil child abuse proceedings violates
the Due Process clause of the Fourteenth Amendment when a
liberty or property interest is at stake").  However, there is
no controlling case law supporting the extension of similar
rights to a person with a foster care/resource caregiver license
who is waiting for a placement.

It is theoretically possible that a license-holder's
right to a placement may be recognized as an extension of a
parent's Fourteenth Amendment right to familial association.
Cf. David v. Kaulukukui, 38 F.4th 792, 799 (9th Cir. 2022) ("The
interest of parents in the care, custody, and control of their
children—is perhaps the oldest of the fundamental liberty
interests recognized by the Supreme Court." (brackets, quotation
marks, and citation omitted)).  However, even if a right to
placement were to be recognized, it was not clearly established
at the time of the events in this case.

18

Thus, because neither prong of the qualified immunity analysis can be established, the Individual Capacity Defendants are entitled to qualified immunity from Plaintiffs' § 1983 claims against them.  There are no genuine issues of material fact, and Plaintiffs' § 1983 claims against the Individual Capacity Defendants - Counts III, VI, VIII, IX, and XVI - fail as a matter of law.  Summary judgment is granted in favor of the Individual Capacity Defendants as to those claims.

## IV.  **Conditional Privilege**

Defendants also argue Plaintiffs' state law claims against the Individual Capacity Defendants are precluded under the qualified privilege doctrine.  [Motion, Mem. in Supp. at 10-11.]  This Court has stated:

> Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty.  Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974).  This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself.  Towse, 647 P.2d at 702.  The privilege is the result of the Hawaii Supreme Court's balancing of competing interests.  It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard.  See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).
>
> For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was

19

> > motivated by malice and not by an otherwise
> > proper purpose.  <u>Towse</u>, 647 P.2d at 702-03;
> > <u>Medeiros</u>, 522 P.2d at 1272.  When a public
> > official is motivated by malice, and not by
> > an otherwise proper purpose, Hawaii law
> > provides that the cloak of immunity is lost
> > and the official must defend the suit the
> > same as any other defendant.  <u>Marshall v.
> > Univ. of Haw.</u>, 821 P.2d 937, 946 (Haw. Ct.
> > App. 1991), *abrogated on other grounds by*
> > <u>Hac v. Univ. of Haw.</u>, 73 P.3d 46 (Haw.
> > 2003).
> >
> > The existence or absence of malice is
> > generally a question for the jury.  <u>Runnels</u>,
> > 525 P.2d at 1129.  However, when the
> > existence or absence of malice is
> > demonstrated to the court via uncontroverted
> > affidavits or depositions, the court may
> > rule on the existence or absence of malice
> > as a matter of law.  <u>See</u> <u>id.</u>
>
> <u>Edenfield v. Estate of Willets</u>, Civ. No. 05-00418 SOM-
> BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14,
> 2006) (parallel citations omitted).

<u>Begley v. Cnty. of Kauai</u>, CIVIL 16-00350 LEK-KJM, 2018 WL

3638083, at *6 (D. Hawai`i July 31, 2018) (some citations

omitted).  "Except in claims for defamation, an actual malice

standard applies as to all tort claims."  <u>Id.</u> (citation and

internal quotation marks omitted).

Even viewing the record in the light most favorable to

Plaintiffs, <u>see</u> <u>Crowley v. Bannister</u>, 734 F.3d 967, 976 (9th

Cir. 2013), there is no genuine issue of material fact as to the

issue of whether Plaintiffs can prove actual malice by clear and

convincing proof.  At most, the evidence in this case shows that

there were differences of opinion, personality conflicts, and

tense interactions between Plaintiffs and the individual defendants, and that there were errors made by the individual defendants.  While Plaintiffs are understandably frustrated and disappointed with the RCG licensing and child-placement process, the circumstances of this case are insufficient to raise a genuine issue of fact for trial as to the issue of actual malice.  The Individual Capacity Defendants are therefore protected by the conditional privilege doctrine from Plaintiffs' state law claims against them, *i.e.*, Count I, the remaining portions of Count IV, and Counts V, VII, XIII, XIV, and XV.  The Individual Capacity Defendants are entitled to summary judgment as to those claims.

**V.    Remaining Claims**

        The Official Capacity Defendants are not protected by the State's sovereign immunity from the portions of Plaintiffs' § 1983 claims that seek prospective injunctive relief to remedy allegedly ongoing violations of Plaintiffs' constitutional rights.  See *supra* Discussion Section II.B.  However, because this Court has concluded that there was no violation of a constitutionally protected right, there are no genuine issues of material fact, and Plaintiffs' § 1983 claims against the Official Capacity Defendants seeking prospective relief fail as a matter of law.  The Official Capacity Defendants are therefore

entitled to summary judgment as to those portions of Counts III, VI, VIII, IX, and XVI.

Plaintiffs' remaining federal law claims allege statutory violations - Counts X, XI, and XII.  However, the statutory schemes that these claims are based upon do not contain provisions allowing enforcement actions by a private party against a state official.  See generally Adoptions Act, Pub. L. No. 110-351, 122 Stat. 3949; Interstate Placement Act, Pub. L. No. 109-239, 120 Stat. 508; Safe Families Act, Pub. L. No. 105-89.  The individual defendants, in their official and individual capacities, are therefore entitled summary judgment as to these claims.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment, filed April 13, 2022, is HEREBY GRANTED. Summary judgment is GRANTED in favor of Defendants as to all of Plaintiffs' claims.  There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and to close this case fifteen days after the filing date of this Order, unless Plaintiffs file a timely motion for reconsideration of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 28, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DR. ALYSSA FRIEDBER AND PAUL SHINDELL VS. CATHY BETTS, ET AL; CV 21-00068 LEK-KJM; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT